JUDGE FRANK MONTALVO

THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVVANTISON

| | § |
|---|---|
| MABEL ARREDONDO, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| VANTIS LIFE INSURANCE COMPANY, | § |
| | § |
| Defendants. | § |

EP22CV0375

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant VANTIS LIFE INSURANCE COMPANY ("VANTIS") is a corporation organized and existing under the laws of Connecticut with its principal address at 200 Day Hill Rd, Windsor, CT 06095 and can be served 200 Day Hill Road, Windsor, CT 06095.

### JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

4. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant

1

because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

6. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to

the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff's personal cell phone (XXX) XXX-1821 has been registered on the National Do-Not-Call Registry since May 2022.

21. Plaintiff never asked the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

22. Defendant VANTIS approves unauthorized pre-recorded voice message phone calls to consumers soliciting Defendant's life insurance policies that state:

> "Thank you for getting a life insurance quote with Vantis Life. To complete your application, please use the link we sent to your email. If you would prefer a free no obligation consultation, please press 1 and you will be connected with a licensed specialist. (Plaintiff pressed one)

23. Plaintiff was transferred to a live representative.

24. The representative then asked Plaintiff qualifying questions, such as date of birth, state in which she resided, and whether she smoked or not, and sent Plaintiff estimated quotes via email. *See Exhibit A.*

25. Defendant knowingly and willfully violates the TCPA because doing so benefits them financially when consumers purchase their life insurance policies.

26. Plaintiff received at least five (5) robocalls and automated text messages to her personal cell phone ending in 1821 from Defendant within a two-day period.

27. With information and belief Plaintiff has received more phone calls from or on behalf of Defendant within the past two years and the true number of calls will be revealed during discovery.

28. Defendant VANTIS has previously been sued for violating the TCPA on action *Connor v. Vantis Life Insurance Company and Tech Leads, LLC* 2:20-CV-01366-DCN-MGB (D.S.C. Ch, June 10, 2020). and continues to violate the law because doing so benefits them financially.

29. Defendant VANTIS' illegal behavior, however, continues to allow them to sell life insurance policies because it benefits them financially.

30. Plaintiff was bombarded and harassed at least four (5) times by third-party telemarketers soliciting life insurance policies on behalf of Defendants.

31. On September 23, 2022, Plaintiff again received another call from Rocio at Vantis to Plaintiff's personal cell phone XXX-XXX-1821 asking if she was still interested in life insurance and that she would be emailing Plaintiff the quotes again.

32. On October 3, 2022, Plaintiff received a text to Plaintiff's personal cell phone XXX-XXX-1821: Hi Mabel, just checking if you are still interested in the quotes I emailed you. Feel free to reply with questions, or you may complete the application; below are the links for your convenience. Rocio@ Vantis Life.

33. Plaintiff did not want or need a life insurance policy however advised Rocio she did for the sole purpose of identifying the company responsible for the illegal robocalls.

34. Plaintiff did not ask Defendants to call her regarding life insurance nor did Plaintiff ever inquire about life insurance in any way.

35. Defendant Vantis attempts to trick consumers into taking their phone calls by falsely stating "Thank you for getting a life insurance quote with Vantis Life" on the prerecorded message despite the fact the consumer has not initiated any contact with Vantis.

36. Plaintiff did not seek Defendant's phone calls or services at any time before, during, or after the phone calls alleged in this Complaint.

37. Table below displays the calls made to Plaintiff from or on behalf of Defendants.

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|

| 1 | 09/14/2022 | 12:15 PM | 915-233-7996 | Robo Call from Vantis |
| 2 | 09/14/2022 | 12:34 PM | 860-341-5155 | Text message |
| 3 | 9/23/2022 | 9:13 AM | 855-687-4376 | Live call with Rocio from Vantis |
| 4 | 9/23/2022 | 9:15 AM | 860-341-5155 | Text message |
| 5 | 10/3/2022 | 1:22 PM | 860-341-5155 | Text message |

38. Defendant initiated numerous unsolicited telemarketing telephone calls regarding life insurance and unlawfully collected Plaintiff's personal information, such as social security number, email address, and home address.

39. Defendant participated in, facilitated, directed, authorized, knew of, or willfully ignored the harassing calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketer calls.

40. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

41. Plaintiff has limited data storage capacity on her cellular telephone. Incoming solicitation calls consumed part of this capacity.

42. No emergency necessitated the calls.

43. Defendant never sent Plaintiff any do-not-call policy. Plaintiff sent an internal do-not-call policy request to customerservice@vantislife.com on October 11, 2022, which is an email listed on the website they own and control https://vantislife.com.

44. On information and belief, Defendant did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

7

45. On information and belief, the Defendant did not train its agents on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

46. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

47. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

48. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

49. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

50. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

51. The calls were to Plaintiff's cellular phone (XXX) XXX-1821 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## I. FIRST CLAIM FOR RELIEF

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

1. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell.

2. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

3. Plaintiff never consented to receive calls or text messages from Defendant Vantis. Plaintiff has had no relationship with Defendant Vantis.

4. Defendant Vantis' calls and text messages were made for the purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

4. The automated calls and text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

5. As a result of their unlawful conduct, Defendant Vantis repeatedly invaded the personal privacy of Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant Vantis to stop their unlawful call and text messages campaigns.

6. Not only did Defendant Vantis make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

7. If the Court finds that Defendant Vantis willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5. Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## III. THIRD CLAIM FOR RELIEF:

## Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

### (Against All Defendants)

1.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.  Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3.  Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

4.  Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

  C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

  D. An award to Plaintiff of damages, as allowed by law under the TCPA;

  E. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity;

  F. Such further relief as the Court deems necessary, just, and proper.


October 21, 2022,         Respectfully submitted,


*/s/ Mabel Arredondo*
MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219


Plaintiff hereby demands a jury trial.

  Gmail                                           **Mabel Arredondo <mabel.arredondo22@gmail.com>**

## Your Life Insurance Application Link - Requested 09/14/2022 02:24 PM ADT
1 message

**Vantis Life** <beahero@vantislife.com>                                         Wed, Sep 14, 2022 at 12:24 PM
To: mabel.arredondo22@gmail.com



A PennMutual Company



Hi Mabel,

Thank you for requesting a quote from Vantis Life. Please find your quote below for a Straight Life, $25,000 policy:

# $63.93

Velocity Whole Life Flex Complete and selected riders

**How will I know the actual rate I will pay?**

Your premium rate is based on your current and past health, family health history, financial history, driving record, and the types of risks you take with your life. Once you complete the application we will be able to provide you with an answer on your requested plan of coverage.

Click on the button below to return to our secure website and complete your application. The link in this button will expire on 09/17/2022 06:24 AM.

After the expiration date, you can click the button to request a new link to be sent to your email.

CONTINUE APPLICATION

If you have any questions regarding your quote or life insurance application, please give us a call at 1-855-Our-Hero (1-855-687-4376) . We are available Monday - Friday, 8:30 am - 5:30 pm Eastern Time.

This is a quote, not a policy. Actual rates are determined by age, health and lifestyle and are subject to change.

---

 **Gmail**                                               **Mabel Arredondo <mabel.arredondo22@gmail.com>**

---

## Your Life Insurance Application Link - Requested 09/14/2022 02:24 PM ADT
1 message

---

**Vantis Life** <beahero@vantislife.com>                                      Wed, Sep 14, 2022 at 12:24 PM
To: mabel.arredondo22@gmail.com



A PennMutual Company

Hi Mabel,

Thank you for requesting a quote from Vantis Life. Please find your quote below for a Straight Life, $25,000 policy:

# $63.93

Velocity Whole Life Flex Complete and selected riders

---

**How will I know the actual rate I will pay?**

Your premium rate is based on your current and past health, family health history, financial history, driving record, and the types of risks you take with your life. Once you complete the application we will be able to provide you with an answer on your requested plan of coverage.

---

Click on the button below to return to our secure website and complete your application. The link in this button will expire on 09/17/2022 06:24 AM.

After the expiration date, you can click the button to request a new link to be sent to your email.

CONTINUE APPLICATION

---

If you have any questions regarding your quote or life insurance application, please give us a call at 1-855-Our-Hero (1-855-687-4376) . We are available Monday - Friday, 8:30 am - 5:30 pm Eastern Time.

This is a quote, not a policy. Actual rates are determined by age, health and lifestyle and are subject to change.

---

 Gmail                                         **Mabel Arredondo <mabel.arredondo22@gmail.com>**

---

**Your Life Insurance Application Link - Requested 09/14/2022 02:27 PM ADT**
1 message

---

**Vantis Life** <beahero@vantislife.com>                          Wed, Sep 14, 2022 at 12:27 PM
To: mabel.arredondo22@gmail.com



A PennMutual Company

Hi Mabel,

Thank you for requesting a quote from Vantis Life. Please find your quote below for a Guaranteed Golden, $25,000 policy:

# $125.08 /Monthly

Guaranteed Golden - Final Expense Insurance

---

Click on the button below to return to our secure website and complete your application. The link in this button will expire on 09/17/2022 06:27 AM.

After the expiration date, you can click the button to request a new link to be sent to your email.

CONTINUE APPLICATION

---

If you have any questions regarding your quote or life insurance application, please give us a call at 1-855-Our-Hero (1-855-687-4376) . We are available Monday - Friday, 8:30 am - 5:30 pm Eastern Time.

This is a quote, not a policy. Actual rates are determined by age, health and lifestyle and are subject to change.

---

📄 9cf7893d-1e51-40e1-a45b-fd0370f15fd2_quote_16631800531337447446.pdf9cf7893d-1e51-40e1-a45b-fd0370f15fd2_quote_16631800531337447446.pdf
1151K